ADK/LJW/2007R00050

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| v. | : | Criminal No. 11- 132 |
| CARLOS E. ALMONTE, a/k/a "OMAR" | : | 18 U.S.C. § 956(a)(1) |

**INFORMATION**

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

**Background**

1. At times relevant to this Information:

(a) Defendant CARLOS E. ALMONTE, a/k/a "Omar" ("ALMONTE"), was a resident of Elmwood Park, New Jersey.

(b) Mohamed Alessa ("Alessa") was a resident of North Bergen, New Jersey, and a co-conspirator of defendant ALMONTE.

**The Conspiracy**

2. From in or around October 2006, through on or about June 5, 2010, in Hudson and Bergen Counties, in the District of New Jersey, and elsewhere, defendant

CARLOS E. ALMONTE,
a/k/a "Omar,"

did, within the jurisdiction of the United States, knowingly and intentionally conspire and agree with Alessa and with others

to commit at a place outside the United States an act that would constitute the offense of murder if committed in the special maritime and territorial jurisdiction of the United States, and did commit an act within the jurisdiction of the United States to effect the object of the conspiracy.

**Object of the Conspiracy**

3. It was the object of the conspiracy for defendant ALMONTE and Alessa to travel to a place outside of the United States and, once there, to murder individuals whose beliefs and practices did not accord with their extremist ideology, whom they referred to as, among other things, kuffar, kafir, and apostates ("non-Muslims").

**Manner and Means of the Conspiracy**

4. It was part of the conspiracy that defendant ALMONTE and Alessa acquired, viewed, and displayed for others material, including documents, audio recordings, and video recordings, produced by and/or relating to Al Qaeda, Al Shabaab, and other extremist groups, that advocated, depicted, incited, and sought to justify the murder, kidnapping, and maiming of non-Muslims, including civilians, worldwide.

(a) Al Qaeda is an international terrorist group dedicated to opposing with force and violence governments not established under strict Islamic Law. Al Qaeda's leader, Osama bin Laden, has declared a jihad, or holy war, against the United

States and its citizens, which is being carried out through Al Qaeda and its affiliated organizations. On or about October 8, 1999, the United States Government designated Al Qaeda a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act (as amended), and Al Qaeda has remained so designated from that time until the time of this Information.

(b) Al Shabaab is an international terrorist group based in Somalia that is engaged in a campaign of violence against, among others, the Somali Transitional Federal Government ("TFG"), multi-national forces deployed to Somalia by the African Union, and civilians in Somalia and elsewhere, in furtherance of establishing an Islamic State within Somalia that accords with Al Shabaab's extremist ideology. As part of this campaign, Al Shabaab has conducted military assaults, bombings, and other violent acts, and has attempted through its media operations to recruit foreigners, including Americans and other Westerners, to join its ranks. On or about February 29, 2008, the United States Government designated Al Shabaab as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act (as amended) and as a Specially Designated Global Terrorist under Section 1(b) of Executive Order 13224 (as amended), and Al Shabaab has remained so designated from that time until the time of this Information.

5. It was further part of the conspiracy that defendant ALMONTE and Alessa traveled to Jordan in or about February 2007 in an attempt to join extremists who were engaging in violent attacks against non-Muslims outside of the United States.

6. It was further part of the conspiracy that defendant ALMONTE and Alessa engaged in combat simulations using paintball guns, computer software, and other items.

7. It was further part of the conspiracy that Alessa practiced shooting firearms.

8. It was further part of the conspiracy that defendant ALMONTE and Alessa physically conditioned themselves by running, lifting weights, hiking in wooded and mountainous terrain, and taking nutritional supplements.

9. It was further part of the conspiracy that defendant ALMONTE and Alessa acquired hydration systems, tactical clothing, knives, night-vision optics, and other equipment.

10. It was further part of the conspiracy that defendant ALMONTE and Alessa acquired several thousand dollars in United States currency and agreed to pool those resources in support of the object of the conspiracy.

11. It was further part of the conspiracy that defendant ALMONTE and Alessa identified, vetted, and attempted to persuade other individuals to join their conspiracy.

12. It was further part of the conspiracy that defendant ALMONTE and Alessa acquired, listened to, and played for others

statements by Anwar al-Awlaki, also known as Anwar al-Aulaqi ("Anwar al-Awlaki") that advocated, incited, and sought to justify acts of violence, including suicide attacks, against non-Muslims, including civilians, worldwide.

13. It was further part of the conspiracy that defendant ALMONTE and Alessa discussed, in substance and in part, traveling to Egypt in order to connect with others who, they believed, would facilitate their travel onward to Somalia.

14. It was further part of the conspiracy that defendant ALMONTE and Alessa discussed, in substance and in part, traveling from Egypt to Somalia, receiving training, instruction, and weapons from other violent extremists, and committing acts of violence that included shooting and murder.

15. It was further part of the conspiracy that defendant ALMONTE and Alessa discussed, in substance and in part, committing violent acts against non-Muslims within the United States if they were unsuccessful in joining violent extremists outside of the United States.

16. It was further part of the conspiracy that defendant ALMONTE caused several thousand dollars in United States currency to be deposited into the bank account of another person in order to hide those funds from law enforcement while preserving the ability to access them from outside the United States.

17. It was further part of the conspiracy that defendant ALMONTE and Alessa acquired reservations and tickets to fly on separate airline flights on June 5, 2010 from John F. Kennedy International Airport in New York directly to Cairo, Egypt.

18. It was further part of the conspiracy that defendant ALMONTE and Alessa attempted to board separate airline flights on June 5, 2010 from John F. Kennedy International Airport in New York directly to Cairo, Egypt, from which they intended to travel to Somalia.

19. It was further part of the conspiracy that defendant ALMONTE and Alessa employed measures, including aliases and cover stories, to conceal the existence of the conspiracy and avoid detection by law enforcement and others.

**Overt Acts**

20. In furtherance of the conspiracy, and to effect its unlawful object, defendant ALMONTE and Alessa committed and caused to be committed the following overt acts in the District of New Jersey and elsewhere:

(a) On or about February 4, 2007, defendant ALMONTE and Alessa traveled from the United States to Jordan aboard an airline flight departing from John F. Kennedy International Airport in New York.

(b) On or about March 1, 2008, at an outdoor facility in West Milford, New Jersey, defendant ALMONTE and Alessa engaged in combat simulations using paintball guns.

(c) On or about August 14, 2008, at a firearms store and gun range in Nevada, Alessa practiced shooting firearms.

(d) On or about November 22, 2009, defendant MOHAMED ALESSA and Almonte traveled to an Army/Navy store in New York City where each purchased a hydration system.

(e) On or about November 29, 2009, in Jersey City, New Jersey, in the presence of defendant ALMONTE, Alessa stated, in part: "We'll start doing *killing* [spoken in Arabic] here, if I can't do it over there."

(f) On or about November 30, 2009, in Jersey City, New Jersey, Alessa demonstrated and instructed defendant ALMONTE and an undercover law enforcement officer (the "UC") regarding various hand-to-hand fighting tactics.

(g) On or about December 6, 2009, in Jersey City, New Jersey, Alessa demonstrated for the UC how to clear a room of adversaries using a simulated handgun and a flashlight in tandem.

(h) On or about December 20, 2009, in New York, New York, Alessa purchased a hydration system and other equipment.

(i) On or about January 3, 2010, in North Bergen, New Jersey, defendant ALMONTE and Alessa physically trained by lifting weights, during which Alessa stated, in substance and in part, that stronger muscles mean bigger muscles which mean killing more non-Muslims.

(j) On or about January 6, 2010, in Jersey City, New Jersey, defendant ALMONTE and Alessa discussed, in substance and in part, traveling abroad to commit violent acts.

(k) On or about January 20, 2010, in Jersey City, New Jersey, defendant ALMONTE and Alessa joined a gym and physically trained by lifting weights together.

(l) On or about January 20, 2010, in Jersey City, New Jersey, defendant ALMONTE and Alessa discussed, in substance and in part, violent extremist groups operating in Somalia.

(m) On or about March 20, 2010, in Jersey City, New Jersey, defendant ALMONTE purchased airline tickets for himself and the UC to depart the United States on June 5, 2010, bound directly for Cairo, Egypt.

(n) On or about April 7, 2010, in Jersey City, New Jersey, defendant ALMONTE gave the UC $2000 for deposit into an account that defendant ALMONTE could access abroad.

(o) On or about April 11, 2010, in North Bergen, New Jersey, defendant ALMONTE and Alessa engaged in combat simulations using computer software.

(p) On or about April 27, 2010, in Jersey City, New Jersey, defendant ALMONTE gave the UC $2000 for deposit into an account that defendant ALMONTE could access abroad.

(q) On or about May 9, 2010, in Garfield, New Jersey, Alessa stated that he did not want to spend much time in Egypt

before leaving for Somalia. Defendant ALMONTE and Alessa then discussed with the UC how they would travel by boat to Somalia and would need to avoid bad weather.

(r) On or about May 16, 2010, in Jersey City, New Jersey, defendant ALMONTE and Alessa viewed videos depicting violent extremists in Somalia carrying AK-47/ Kalashnikov assault rifles and rocket propelled grenade launchers.

(s) On or about May 23, 2010, in New Jersey, defendant ALMONTE went to a book store and attempted to find a Somali language phrase book.

(t) On or about June 2, 2010, Alessa viewed a video depicting Al Shabaab fighters conducting a military assault on a government building using rockets and automatic weapons.

(u) On or about June 2, 2010, Alessa and the UC discussed, in substance and in part, among other things, how they would travel from Egypt to Somalia.

(v) On or about June 2, 2010, in New Jersey, defendant ALMONTE gave the UC $4100 for deposit into an account that defendant ALMONTE could access abroad.

(w) On or about June 5, 2010, Alessa traveled from New Jersey to JFK Airport in New York and attempted to board Egypt Air flight number 986 bound directly for Egypt, from which he intended to travel to Somalia.

     (x)   On or about June 5, 2010, defendant ALMONTE traveled from New Jersey to JFK Airport in New York, and attempted to board Delta Airlines flight number 84 bound directly for Egypt, from which he intended to travel to Somalia.

     In violation of 18 U.S.C. § 956(a)(1).

## FORFEITURE ALLEGATIONS

1. The allegations contained in paragraphs 1 through 20 of this Information are incorporated by reference as though set forth in full herein for the purpose of noticing forfeitures pursuant to Title 28, United States Code, Section 2461(c).

2. The United States hereby gives notice to the defendant that, upon conviction of the offense charged in the Information, the government will seek forfeiture, in accordance with Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(G), of all assets within the categories described in Section 981(a)(1)(G) relating to the violation of Title 18, United States Code, Section 956(a)(1), alleged in this Information.

3. If by any act or omission of the defendant, any of the property subject to forfeiture herein:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party,

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant

pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(G).

_____
PAUL J. FISHMAN
United States Attorney

CASE NUMBER: _____

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

CARLOS E. ALMONTE
a/k/a "OMAR"

INFORMATION FOR

18 U.S.C. § 956(a)(1)

**PAUL J. FISHMAN**
UNITED STATES ATTORNEY, NEWARK, NEW JERSEY

ANDREW KOGAN
L. JUDSON WELLE
ASSISTANT U.S. ATTORNEYS
NEWARK, NEW JERSEY
973-645-2735